```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
                  CENTRAL DIVISION AT LEXINGTON
```

SANDRA KAY BANKS,            )
                             )
    Plaintiff,             ) Civil Action No. 10-cv-370-JMH
                             )
v.                           )
                             )
MICHAEL J. ASTRUE,           ) **MEMORANDUM OPINION AND ORDER**
Commissioner of Social       )
Security,                    )
                             )
    Defendant.             )

          \*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court upon cross-motions for summary judgment on Plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits [Record No. 11 and 12].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I.   OVERVIEW OF THE PROCESS**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1.   An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2.   An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof to show that he is disabled through the first four steps. *Id.* If the claimant has not been found disabled through the first four steps, however, the burden of proof shifts to the Secretary of Health and Human Services. *Id.*

## II. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by

substantial evidence and whether the ALJ employed the proper legal standards in reaching his conclusion. *See* 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

**III. FACTUAL BACKGROUND**

The ALJ found that Plaintiff suffers from "hypertension, hyperlipidemia, arthritis and fibromyalgia with fatigue." [Tr. 13].[2] In doing so, the ALJ recognized Plaintiff's treating physician Dr. Paul Goldfarb's medical opinions and diagnosis of rheumatoid arthritis and fibromyalgia. [Tr. 14]. The ALJ also noted that Dr. Goldfarb had opined in 2000 that he could not find signs of Plaintiff's arthritis and in 2006 that Plaintiff's arthritis was doing very well. *Id.* Similarly, the ALJ also recognized that Dr. Goldfarb had noted that Plaintiff's fibromyalgia issues were resolved in 1996. *Id.* Though Dr. Goldfarb opined that Plaintiff's pain and fatigue experienced two years later could be caused by Plaintiff's fibromyalgia, the same

---

[2] The ALJ found, and Plaintiff does not dispute, that Plaintiff did not show that her hypoipidemia or hypertension caused the significant limitations necessary to move past step two of the five-step disability analysis. *See* [Tr. 16]; [Record No. 11-1].

3

report noted that Plaintiff's fibromyalgia was "actually doing fairly well." [Tr. 237]; *see* [Tr. 14.] The ALJ failed to address, however, the opinions of treating physicians Drs. Nadeem Shaikh, and Melecio Abordo who gave similar opinions and diagnoses to those of Dr. Goldfarb. *See generally* [Tr. 11-18]. That said, Plaintiff has failed to cite in her argument to the Court, and the Court has failed to discover during its own review of the record, where Dr. Goldfarb, Shaikh or Abordo opined on the impact of Plaintiff's shoulder issues, rheumatoid arthritis or fibromyalgia on her ability to do basic work activities. *See generally* [Record No. 11-1].

Nonetheless, Plaintiff has testified that the fibromyalgia, arthritis and shoulder issues have resulted in virtually constant pain which is exacerbated by stress, exhaustion, lifting, weather changes and repetitive motion. [Tr. 15]. Plaintiff also states that she experiences difficulty sleeping due to night sweats, dry mouth, and discomfort. *Id.* However, Plaintiff also testified that she has no difficulties dealing with her personal care and on any typical day will drink coffee, read the newspaper and shower. *Id.* Additionally, Plaintiff does household chores, including dusting, sweeping and mopping, as well as washing the dishes, doing the laundry, and straightening up the house. *Id.* At the hearing, Plaintiff also stated that she drives to the grocery store as well as doctor's appointments which are seventy-five miles away from her

home. *Id.* at 16. Though Plaintiff testified she can no longer piece quilts or read as the pain causes her to lose concentration, she watches television and does crossword puzzles and word searches. *Id.* at 16. The ALJ also gave significant weight to consulting physician Dr. Rita Ratliff's opinion "that there was 'no evidence of any specific restriction for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or traveling.'" [Tr. 17] (citing Tr. 637). Thus, while the ALJ noted that Plaintiff's rheumatoid arthritis, fibromyalgia and shoulder issues "could reasonably be expected to produce the alleged symptoms," the ALJ also found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" leading to the conclusion that Plaintiff did not present a severe impairment that significantly limited Plaintiff's ability to do basic work activities. [Tr. 16-17].

## IV. DISCUSSION

Step two of the five-step analysis sets out a de minimis hurdle that a claimant must overcome before an ALJ begins an individual consideration of claimant's vocational situation. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted)*.* Thus, step two, or the non-severity step, serves as "an administrative convenience [meant] to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863

5

(citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 n.1 (6th Cir. 1985)). The claimant, therefore, carries the "burden to prove the severity of her impairments" and an ALJ may find that a claimant is not disabled if the claimant fails to show that her impairment significantly limits her ability to do basic work activities like "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, [] handling," or other basic work activities described in regulation. *Id.;* 20 C.F.R. § 404.1521. Thus, an impairment is "not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

### A. Plaintiff has not shown her fractured shoulder significantly limited her ability to perform basic work activities.

As an initial matter, Plaintiff argues the ALJ failed to consider the uncontested physical limitations of her fractured shoulder. Plaintiff fails to cite, however, to any part of the record in support of her argument, relying instead on her statement of facts and medical history sections in her motion that detail her diagnoses and medical history.³ In fact, Plaintiff fails to

---

³ While Plaintiff has cited to the administrative record in various places throughout her motion, she fails to cite to the transcript when discussing this and other portions of her argument. The Court has informed Plaintiff that "it will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments." [Record No. 6, p. 3]. Regardless, the Court has examined the record set forth in other

6

mention her shoulder injury in the argument section of her motion until the final sentence stating only that "[g]iven the available record that has been produced by the Commissioner ([including] the uncontested physical limitations from Ms. Banks shoulder injury) . . . an outright Award of Benefits would be appropriate here in Ms. Banks' claim." [Record No. 11-1, p.19]. Regardless, the ALJ considered the opinion of Plaintiff's treating physician, Dr. Gregory Grau who noted in April 2009 that while Plaintiff's fracture had healed with a malunion somewhat limiting her activities, Plaintiff was not taking any pain medication nor participating in physical therapy as a result of the fracture. [Tr. 17] (citing Tr. 717). The ALJ also noted that Dr. Grau said in October 2008 that the fracture had essentially healed. [Tr. 17]. Considering the evidence that the fracture had healed and the lack of aggressive treatment through therapy and medication can provide substantial evidence in support of an ALJ's decision that a claimant has not shown a severe impairment, the Court affirms the finding of the ALJ that Plaintiff is not disabled as a result of Plaintiff's shoulder fracture. *See e.g, Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 797 (6th Cir. 1986) ("Objective tests and mild medication taken by claimant do not bear out the severity of claimant's pain.").

---

portions of Plaintiff's motion and determined that this argument is without merit.

**B. The ALJ properly discounted the opinion of Plaintiff's treating physician, Dr. Goldfarb.**

Plaintiff also argues that the ALJ failed to give appropriate deference to the medical opinions and diagnoses of her treating physicians with regard to her rheumatoid arthritis and fibromyalgia. A treating physician's medical opinion and diagnosis should receive substantial deference when considering whether a claimant has shown a severe impairment and complete deference if that opinion is uncontradicted. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). Thus, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well supported by medically acceptable clinical and laboratory techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Should the ALJ decide not to give controlling weight to a treating physician's opinion, however, the "decision denying benefits must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Id.* (quoting SSR 96-2p, 1996 SSR LEXIS 9, at *12-13 (July 2, 1996). Regardless of the weight accorded to a treating physician, however, a claimant

must still "establish that his condition is disabling." *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1998) (citation omitted).

Nonetheless, the ALJ properly discounted the medical opinions and diagnosis of Dr. Goldfarb, Plaintiff's treating physician, regarding Plaintiff's rheumatoid arthritis and fibromyalgia. Plaintiff argues that Dr. Goldfarb's records show that these "diseases have progressed despite intensive medical treatment and medications to the extent that Ms. Banks had to abandon full time work . . . due to her pain and limitations." [Record No. 17]. Plaintiff, however, has again failed to cite, and the Court has failed to find, any medical opinion by Dr. Goldfarb that supports this conclusory statement in Plaintiff's argument.[4] *See supra* note 3. Furthermore, the ALJ recognized that Dr. Goldfarb has reported that "the claimant was doing very well with regard to her rheumatoid arthritis" in 2006 and "indicated the claimant was doing well with regard to this condition" in 2009.[5] *See Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 149-50 (6th Cir.

---

[4] Indeed, upon examination of citations presented by Plaintiff in a four page paragraph detailing Dr. Goldfarb's examinations, the Court has found observations such as Plaintiff "shows a well developed, middle-aged white female in no acute distress" and "[r]heumatoid disease, actually doing very well . . . [f]ibromyalgia, doing well." [Tr. 245-46]; *see* [Record No. 11-1, p. 5-8](citing Tr. 245-46).

[5] Defendant has also cited to numerous points in the record where Dr. Goldfarb reported Plaintiff's rheumatoid disease was going well. [Record No. 12] (citing Tr. 208, 210, 212, 214, 221, 228, 237, 240, 242, 246, 248, 269, 270, 271)

9

1986) (holding that a treating physician not finding the existence of "serious health problems" weighs in favor of finding that the Plaintiff is not disabled). The ALJ also noted that Dr. Goldfarb stated that claimant's fibromyalgia was resolved in February 1996. [Tr. 14]. Plaintiff correctly argues the ALJ's recognition of consulting physician Dr. Ratliff's medical opinion does not constitute substantial evidence to support a finding contrary to Dr. Goldfarb's opinion. [Tr. 17] (citing Tr. 637) *See Miracle v. Celebreeze*, 351 F.2d 361, 378-79 (6th Cir. 1965) (finding a consulting physician's opinion does not constitute substantial evidence of non-disability in the face of two contrary opinions from treating physicians). Dr. Ratliff's opinion that "there was 'no evidence of any specific restriction for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or traveling," however, only further supports Dr. Goldfarb's statements that both conditions were resolved. *See* [Tr. 17]. Thus, as Dr. Goldfarb failed to find Plaintiff had a serious health condition as a result of rheumatoid arthritis and fibromyalgia, the ALJ acted properly in considering Dr. Goldfarb's medical opinion and diagnoses.

    **C. The ALJ's failure to address treating physician Drs. Shaikh and Abordo's medical opinions and diagnoses regarding her fibromyalgia was harmless error.**

Furthermore, though the ALJ failed to discuss the medical opinions and diagnosis of fibromyalgia of treating physicians Drs.

10

Shaikh and Abordo, the Court finds this failure constituted harmless error. While Defendant spends a majority of its argument attempting to present substantial evidence in favor of the ALJ's finding,[6] "[a] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977)). However, "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.* at 547. Plaintiff again argues in a conclusory fashion that the diagnosis and opinions of her treating physicians Drs. Shaikh and Abordo's diagnosis of

---

[6] For example, while Plaintiff argued that Dr. Shaikh saw Plaintiff on July 8, 2003 with diagnoses of fibromyalgia, among other ailments, Defendant countered that throughout the rest of the sixty pages in the record attributed to Dr. Shiakh, Plaintiff reported no pain on at least four different occasions and had normal muscle tone and strength after Plaintiff's diagnosis in 2003. [Record No. 11-1, p. 10] (citing Tr. 628); [Record No. 12, p. 10] (citing Tr. 581, 619, 621, 626, 633). In addition, while Plaintiff argues that Dr. Abdorbo diagnosis of fibromyalgia shows a severe impairment, Defendant notes that Dr. Abdorbo noted Plaintiff was able to get out of bed, go shopping and climb stairs. [Tr. 11-1, p. 12] (citing Tr. 646); [Tr. 12, p. 10] (citing Tr. 655); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)) (holding that an ALJ properly refused to give controlling weight to a treating physician's opinion that contradicts other opinions of the same treating physician already in the record).

fibromyalgia and their continued treatment of Plaintiff for fibromyalgia shows "impairments that have progressed despite intensive medical treatment and medications." [Record No. 11-1, p. 17]. As previously stated, however, Plaintiff cannot rely on the diagnosis alone but, rather, must show that the fibromyalgia has significantly limited her ability to do basic work activities. *See Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (citation omitted). Plaintiff, however, has failed to cite to any part of the record, whether in her argument or statement of facts and medical evidence, that shows that Dr. Shiakh and/or Abordo opined that her fibromyalgia was a significant limitation on her ability to do basic work activities. *See generally* [Record No. 11-1]. Furthermore, the ALJ adopted the opinions of both Dr. Shaikh and Adorbo, either implicitly or accidentally, that Plaintiff suffered from the medically determinable impairment of fibromyalgia. [Tr. 13]. Thus, although the ALJ committed a procedural error when he failed to address the opinions and diagnoses of Drs. Shaikh and Abordo, the error did not have an effect on the final decision as to whether Plaintiff's fibromyalgia significantly limited her ability to perform basic work activities and was harmless.

> **D. The ALJ acted properly in finding Plaintiff's complaints incredible and refusing to rely on a vocational expert's opinion in support of Plaintiff's claim of severe impairment**.

The harmless nature of this error becomes particularly apparent when considering the ALJ's credibility determination as to

Plaintiff's subjective complaints. In cases where the symptoms associated with the ailment, and not the underlying condition itself, provide the basis for a finding of disability, the ALJ must perform a two-part analysis to evaluate whether the symptoms rise to the level required to find disability. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Thus, the ALJ must first determine whether an "underlying medically determinable physical impairment . . . could reasonably be expected" to cause these symptoms before evaluating the "intensity, persistence and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* (citing 20 C.F.R. § 416.929(a)). In accepting the medical opinions and diagnoses, again either implicitly or by accident, of the treating physicians Drs. Shiakh and Abordo as well as explicitly accepting the medical opinions and diagnoses of Dr. Goldfarb, the ALJ found that Plaintiff's rheumatoid arthritis and fibromyalgia were a medically determinable condition that could reasonably be expected to cause significant limitations to Plaintiff's ability to do basic work activities. [Tr. 16].

As to the second part of the credibility determination, however, the ALJ found Plaintiff's subjective complaints of pain incredible. In making this determination, "an ALJ may consider household and social activities in evaluating" Plaintiff's subjective complaints. *Blacha v. Sec'y of Health & Human Servs.*,

927 F.2d 228, 231 (6th Cir. 1990); *see Warner v. Comm'r of Soc. Sec*, 375 F.3d 387, 392 (6th Cir. 2004) (affirming an ALJ's partial adverse credibility assessment for a claimant that claimed to experience disabling pain but was able to "manage his personal hygiene, pick a coin off a table, vacuum, drive short distances and wash spoons and forks). Additionally, a non-aggressive approach to treatment through the use of over-the-counter medication also weighs against the credibility of a claimant's subjective complaints of pain. *See e.g, Blacha*, 927 F.2d at 231 ("[Plaintiff's] use of only mild medications (aspirin) undercuts complaints of disabling pain . . . as does his failure to seek [further treatment.]"); *Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 797 (6th Cir. 1986) ("Objective tests and mild medication taken by claimant do not bear out the severity of claimant's pain."). Plaintiff claims that her rheumatoid arthritis, fibromyalgia, neck pain, shoulder pain, degenerative disk disease and bone spurs cause her pain 80% of the time which is made worse by stress, exhaustion, lifting, weather changes and repetitive motion. [Tr. 15]. The ALJ, however, cited Plaintiff's ability to drive to the grocery store and drive to doctor's appointments seventy-five miles away from her home as evidence contrary to Plaintiff's assertions regarding her pain. Furthermore, the ALJ also found Plaintiff's ability to perform crossword puzzles and word searches, and complete household chores, such as washing

14

dishes, doing laundry and straightening up the house weighed against the credibility of Plaintiff's subjective complaints of pain. [Tr. 15-16]. Additionally, the ALJ noted that Plaintiff's physicians are not aggressively treating her rheumatoid arthritis and fibromyalgia instead instructing her to take over-the-counter medicine for her conditions and use a heating pad, ice packs and splints to treat her impairments. *Id*. at 15. The Court finds, therefore, that substantial evidence supports the ALJ's decision that Plaintiff's subjective complaints of significant limitations to her ability to perform basic work activities are incredible.

Thus, Plaintiff's argument that vocational expert ("VE") Joy Forrest's response to the ALJ's hypothetical regarding the lack of jobs in the national and regional economy suffices as proof that a significant limitation in her work abilities also fails. A VE's response to a hypothetical does not constitute substantial evidence if the hypothetical does not accurately describes the claimant. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (citation omitted). When asked whether jobs exist in the national or regional economy for Plaintiff, "assuming that [the ALJ] gave total and complete credibility to the testimony . . . of Miss Banks, and all the impairments that she testified to are supported by credible medical evidence," the VE stated "I believe that there wouldn't be any jobs." [Tr. 46]. Plaintiff argues this response proves that her impairments significantly limited her ability to perform basic

15

work activities. [Record No. 11-1, p. 19]. This Court, however, has already found that the ALJ acted properly in finding that Plaintiff's subjective complaints as to the pain and symptoms associated with her impairments were incredible. Thus, the VE's response to this hypothetical based on these incredible claims cannot provide substantial evidence of a severe impairment as they do not accurately describe the Plaintiff. As a result, based on the credibility determination of Plaintiff's complaints and consideration of Plaintiff's treating physicians' medical opinions and diagnoses, substantial evidence exists in support of the ALJ's finding that Plaintiff does not have a severe impairment and, thus, is not disabled.

**E. Plaintiff has not shown her rheumatoid arthritis does not meet the requirements set forth in the listed impairments in appendix 1 requiring a finding of disability**

Finally, Plaintiff's argument that remand is required based on the ALJ's failure to address whether Plaintiff's rheumatoid arthritis "is listed in appendix 1" as stated in step three of the five-step disability analysis is also without merit. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citation omitted); [Record No. 11-1, p. 17]. Plaintiff fails to recognize that the ALJ ended his analysis at step two after finding that Plaintiff's impairments did not significantly limit her ability to perform basic work activities. [Tr. 14]; *see Preslar*, 14 F.3d at 1110. As a result, the ALJ did not need to consider

16

whether Plaintiff's impairment met the definitions set forth in the Listing of Impairments. *See Preslar*, 14 F.3d at 1110; *see also* Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1-2. However, since a showing that an impairment meets the definition set forth in the Listing of Impairments can prove a Plaintiff should advance past step two, this Court shall consider whether Plaintiff meets this criteria. *See Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 151 (6th Cir. 1986) ("[A]ny impairment that meets the criteria in the Listing of Impairments can hardly be classified as non-severe.").

Nevertheless, Plaintiff has failed to show this Court that her rheumatoid arthritis "satisfies all of the criteria of" Listing 1.02, as argued in her motion. 20 C.F.R. § 404.1525. Plaintiff argues her rheumatoid arthritis meets the definition set forth in Listing 1.02. To show a severe impairment under this listing, Plaintiff must show, among other things, that her rheumatoid arthritis results in either an extreme limitation of Plaintiff's ability to walk, such as "the inability to walk without the use of a walker, . . . the inability to use standard public transportation [or] the inability to carry out routine ambulatory activities, such as shopping or banking" or an extreme limitation of Plaintiff's gross and fine motor skills, such as "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers

17

or files, and the inability to place files in a file cabinet at or above waist level." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(b)(2), 1.00(c), 1.02. The ALJ has already noted in its decision, however, that Plaintiff testified that she performs household chores, makes meals, drives to the grocery store and shops once per week among many other things that fall outside the limitations set forth in the listing. [Tr. 15-16]. Thus, even had the ALJ moved past step two of the five-step analysis, substantial evidence would have existed for the ALJ's decision that Plaintiff would not have proven disability under step three.

**V. CONCLUSION**

Plaintiff has failed to show, therefore, that her fibromyalgia, rheumatoid arthritis and shoulder ailments constitute severe impairments. While the ALJ recognized Plaintiff's treating physicians' medical opinion and diagnoses of fibromyalgia and rheumatoid arthritis, Plaintiff has not shown how these impairments significantly limit her ability to perform basic work activities. Furthermore, Plaintiff has failed to show that her rheumatoid arthritis meets the requirements listed in appendix 1 equal to a listed impairment.

Accordingly, **IT IS ORDERED**:

(1) Plaintiff's Motion for Summary judgment [Record No. 11] is **DENIED**; and

(2) Defendant's Motion for Summary Judgment [Record No. 12]

is **GRANTED**.

This the 16th day of August, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge